UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JAVIER SOTO GOMEZ, *individually and on behalf of others similarly situated*,

                              Plaintiff,

             -against-

4 GUYS REALTY, INC. (D/B/A GRILL ZONE),
FARES KASSIM YAFAI, MANSOOR KASSIM
SHAIBI, and AISHA NASER SALEH,

                            Defendants.

----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
24 CV 1972 (LDH) (CLP)

**POLLAK**, United States Magistrate Judge:

On March 18, 2025, plaintiff Javier Soto Gomez commenced this action against defendants 4 Guys Realty, Inc. (d/b/a Grill Zone) (the "corporate defendant"), Fares Kassim Yafai, Mansoor Kassim Shaibi, and Aisha Naser Saleh[1] (collectively, the "individual defendants"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and the New York Labor Law §§ 190 *et seq.* ("NYLL"), seeking unpaid overtime wages, spread-of-hours pay, liquidated damages, statutory civil damages, pre- and post-judgment interest, and attorney's fees and costs. (Compl.).[2]

Currently pending before this Court on referral from the Honorable LeShann DeArcy Hall is plaintiff's motion for default judgment. For the reasons set forth below, it is respectfully recommended that plaintiff's motion be granted.

---

[1] The claims against defendant Saleh were voluntarily dismissed on August 12, 2024. (See ECF No. 11).
[2] Citations to "Compl." refer to plaintiff's Complaint, filed December 28, 2024 (ECF No. 1).

## FACTUAL BACKGROUND

According to the Complaint, defendants 4 Guys Realty, Inc., Fares Kassim Yafai,

Mansoor Kassim Shaibi, and Aisha Naser Saleh operated a deli under the name "Grill Zone,"

located at 54 Avenue C, New York, NY 10009 (the "54 Avenue Location"), which was relocated

to 5418 New Utrecht Avenue, Brooklyn, NY 11219 (the "New Utrecht Avenue Location") in

September 2018.  (Compl. ¶ 2).  Plaintiff alleges that at all times relevant to this action, the deli

was a business engaged in interstate commerce, using numerous items on a daily basis which

were produced outside of the State of New York, and that defendants had a gross annual volume

of sales exceeding $500,000.  (Id. ¶¶ 30, 31, 36, 71).

Defendants Yafai, and Shaibi, along with the dismissed defendant Saleh, are alleged to be

the owners, managers, principals, or agents of the corporate entity and, through the corporate

entity, operated the deli as a joint or unified enterprise.  (Id. ¶¶ 3, 19-21, 23).  According to

plaintiff, the individual defendants each possessed an ownership interest over the corporate

defendant and maintained operational control over the corporation, with the power to hire and

fire employees, determine work schedules, and establish the rate and method of pay for the deli

employees.  (Id. ¶¶ 19-21, 23, 25, 29).

Plaintiff Soto Gomez alleges that from on or around 2015 until on or about June 2023,[3]

he was employed by defendants as a stocker, cook, and cleaner working at the deli.  (Id. ¶¶ 4, 32,

34, 35).  According to the plaintiff, he regularly handled goods in interstate commerce such as

goods and other supplies produced outside the State of New York.  (Id. ¶ 36).

Plaintiff alleges that he worked at the 54 Avenue Location from approximately March

2018 until June 2018 and that he worked at the New Utrecht Avenue Location from July 2018

---

[3] Plaintiff does not allege a specific start date or month or specific end date.

until May 2023.  (Id. ¶ 39).  He also alleges that: (1) from March 2018 until June 2019, he worked 5 days per week, typically comprising 54 hours of work; (2) from July 2019 until October 2019, he worked 6 days per week, typically comprising 60 hours of work; (3) from November 2019 through March 2020, August 2020 through January 22, 2021, and from February 15, 2020 through March 2023, he worked 7 days per week, typically comprising 84 hours of work; (4) from April 2023 through May 29, 2023, he worked 10 hours per day, 7 days per week, or 70 hours.  (Id. ¶¶ 39-45).  According to plaintiff, from March 2018 through December 2018 he was paid $15.50 per hour; from January 2019 through January 2021, he was paid $15.00 per hour; from February 2021 through December 2021, he was paid $16.00 per hour; and from January 2022 through May 29, 2023, he was paid $17.00 per hour.  (Id. ¶¶ 47-50).  Plaintiff also claims that defendants did not utilize any time tracking devices to accurately reflect employees' hours worked, nor did they provide wage notices to employees indicating employees' rates of pay, regular pay day, or information about overtime pay rates.  (Id. ¶¶ 53-55).  Finally, plaintiff alleges that defendants maintained a policy and practice requiring plaintiff to work in excess of 40 hours a week without paying him overtime compensation or spread-of-hours pay.  (Id. ¶ 56).

DISCUSSION

I.    Default Judgment

    A.  Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Rule 55 sets forth a two-step process for an entry of default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993).  First, the Clerk of Court enters the default

pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. <u>Id</u>. Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. <u>See</u> Fed. R. Civ. P. 55(b).

The Second Circuit has cautioned that since a default judgment is an "extreme sanction[,]" it should only be entered as a last resort. <u>See</u> <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d at 95–96. Thus, considering the "oft-stated preference for resolving disputes on the merits[,]" default judgments are "generally disfavored[,]" and doubts should be resolved in favor of the defaulting party. <u>Id</u>. Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default. <u>See</u> <u>Erwin DeMarino Trucking Co. v. Jackson</u>, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants on notice, <u>see</u> Fed. R. Civ. P. 54(c) (stating a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); <u>King v. STL Consulting LLC</u>, No. 05 CV 2719, 2006 WL 3335115, at *4–5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the

4

complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved—the more money involved, the less justification for entering the default judgment.  Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendants.  See Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012).

The burden is on the plaintiff to establish his entitlement to recovery.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993).  When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability.  See id.  For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

B.  Default Judgment Liability

In this case, plaintiff alleges that defendants violated the FLSA and the NYLL by failing to pay overtime, spread-of-hours premiums, and by failing to provide plaintiff with proper wage notices and wage statements.  (Compl. ¶¶ 8-14).

1)  FLSA Claims

To establish a claim under the FLSA, a plaintiff must prove that: (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment

5

relationship is not exempted from the FLSA.  Edwards v. Community Enters., Inc., 251 F. Supp.

2d 1089, 1098 (D. Conn. 2003) (citing 29 U.S.C. §§ 206(a), 207(a); Tony & Susan Alamo

Found. v. Secretary of Labor, 471 U.S. 290, 295 (1985)).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for

commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods
> for commerce, or that has employees handling, selling, or otherwise
> working on goods or materials that have been moved in or produced
> for commerce by any person; and . . .  whose annual gross volume
> of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).

In the Complaint, plaintiff alleges that the corporate defendant, 4 Guys Realty, Inc. d/b/a

Grill Zone, has been and continues to be an employer engaged in interstate commerce within the

meaning of the FLSA.  (Compl. ¶¶ 30, 31, 36, 71).  Plaintiff further alleges that the corporate

defendant has had annual gross revenues in excess of $500,000 at all relevant times.  (Id. ¶ 30).

Thus, plaintiff has adequately alleged that defendant 4 Guys Realty, Inc. d/b/a Grill Zone is a

covered enterprise under the FLSA.

The FLSA defines an "employee" as "any individual employed by an employer."  29

U.S.C. § 203(e)(1); Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098.  An

"employer" is "any person acting directly or indirectly in the interest of an employer in relation

to an employee[.]"  29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership,

association, corporation, business trust, legal representative, or any organized group of

persons."  29 U.S.C. § 203(a).  To "employ" "includes to suffer or permit to work."  29 U.S.C. §

203(g).  The FLSA covers both "employees who in any workweek [are] engaged in commerce or

in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce[.]"  29 U.S.C. § 206(a).

An individual may be liable as an "employer" under the FLSA so long as he exercises "operational control" over the employees in question, see Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013), cert. denied, 572 U.S. 1002 (2014), and individuals who are found to be "employers" under the FLSA may be held jointly and severally liable to the plaintiff.  Moon v. Kwon, 248  F. Supp. 2d 201, 237 (S.D.N.Y. 2002); see also Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011).

Plaintiff alleges in the Complaint that he worked for the defendants as a stocker, cook, and cleaner at their deli, Grill Zone.  (Compl. ¶¶ 4, 32, 34, 35).  Plaintiff also alleges that the individual defendants Yafai, Shaibi, and dismissed defendant Saleh were the owners of the corporate defendant, holding managerial positions in the defendant corporation and exercising operational control over the business.  (Id. ¶¶ 3, 19-21, 23, 25, 29).  Thus, based on the allegations in the Complaint, plaintiff qualifies as an "employee" and defendants as "employers" under the FLSA.  The Court does not find any basis for exempting the employment relationship at issue from coverage under the FLSA.[4]

Plaintiff alleges that defendants violated the FLSA by failing to pay overtime wages for hours worked in excess of 40 hours per week.  (Id. ¶¶ 5, 9, 10, 38, 56, 57, 69-75).  Since defendants have defaulted, the Court accepts plaintiff's uncontested allegations as true and respectfully recommends that plaintiff be deemed to have sufficiently set forth the necessary elements to state a claim under the FLSA against the corporate defendant and individual defendants Yafai and Shaibi.

---

[4] See 29 U.S.C. § 213(a) (setting forth the exemptions under the FLSA).

2) NYLL Claims

Plaintiff also alleges that defendants violated the NYLL.  The NYLL provides for a minimum wage and overtime scheme that is "largely similar" to that contained in the FLSA. Man Wei Shiu v. New Peking Taste Inc., No. 11 CV 1175, 2014 WL 652355, at *10 (E.D.N.Y. Feb. 19, 2014) (citing Rosas v. Subsational, No. 11 CV 2811, 2012 WL 4891595, at *4 (E.D.N.Y. Sept. 11, 2012), adopted, 2012 WL 4866678 (E.D.N.Y. Oct.15, 2012)).  Like the FLSA, the NYLL requires employers to pay overtime rates calculated at one-and-one-half times the employees' regular rate of pay for all hours worked in a week over 40 hours.  See N.Y. Lab. L. § 652; 12 N.Y.C.R.R. §§ 142-2.2, 146-1.4; see, e.g., Charvac v. M & T Proj. Mgrs. of N.Y., Inc., No. 12 CV 5637, 2015 WL 5475531, at *4–5 (E.D.N.Y. June 17, 2015); see also Chawdhury v. Hamza Express Food Corp., No. 14 CV 150, 2015 WL 5541767, at *4–5 (E.D.N.Y. Aug. 21, 2015), report and recommendation adopted by 2015 WL 5559873 (E.D.N.Y. Sept. 18, 2015). Moreover, the NYLL requires employers to pay spread-of-hours premiums for days in which the employee worked more than 10 hours.  See 12 N.Y.C.R.R. §§ 142-2.4, 146-1.6.

To recover under the NYLL, plaintiffs must prove that they are "employees" and that defendants are "employers" as defined by the statute.  See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407–08 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business to be subjected to the law.  See N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as [an] employer").  Similarly, an employee is simply defined as "any individual employed or permitted to work by an employer in any occupation[.]"  N.Y. Lab. Law § 651(5). In this case, plaintiff's allegations that he was employed by defendants within the meaning of the

NYLL §§ 2 and 651 suffice to put him under the coverage of the NYLL. (Compl. ¶¶ 4, 13, 15, 26, 32, 34, 35).

Plaintiff alleges in the Complaint that defendants failed to pay spread-of-hours premiums and overtime wages. (Compl. ¶¶ 5, 7, 9, 10, 38, 56, 57, 69-75, 81). Accordingly, based on these uncontested allegations, the Court respectfully recommends that plaintiff be deemed to have adequately alleged the elements necessary to state claims of overtime. However, as laid out below, because plaintiff was paid above minimum wage throughout the relevant period, the Court respectfully recommends that the district court denies plaintiff's request for spread of hours pay.

In addition, plaintiff claims that defendants violated the Wage Theft Prevention Act ("WTPA"), NYLL §§ 195(1) and 195(3), that requires employers to provide employees with notices regarding their wages at the time of their hiring and wage statements with each payment of wages. (Compl. ¶¶ 54, 64, 65, 88). The notice must contain the rate or rates of pay, whether the employee was to be paid by the hour, shift, day, or week, any allowances claimed as part of the minimum wage, the regular pay day, the name of the employer, the physical address of the employer's main office, and the employer's telephone number in both English and the employee's primary language, if different from English. N.Y. Lab. L. § 195(1)(a). The wage statement must include "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions;" and certain allowances. Id. § 195(3).

The Supreme Court explained in TransUnion LLC v. Ramirez, that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their

responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." 594 U.S. 413, 426 (2021). The Supreme Court clarified that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." Id. at 427 (emphasis in original). Applying TransUnion to WTPA claims, the Second Circuit in Guthrie v. Rainbow Fencing Inc. recently declared that in order to bring a claim under Section 195 of the NYLL, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm." 113 F.4th 300, 308 (2d Cir. 2024). Thus, after Guthrie, alleging only a statutory violation of the WTPA is insufficient. Instead, a plaintiff sufficiently alleges an injury-in-fact when he claims, for example, that the failure to notify "prevented the employee from obtaining full payment of wages in a timely fashion." Id. at 309.

Plaintiff alleges that defendants' policy and practice of not providing plaintiff with wage statements were implemented "willfully to disguise the actual number of hours Plaintiff Soto…worked, and to avoid paying Plaintiff Soto properly for his full hours worked" and to "minimize[e] labor costs and deny[] employees compensation." (Compl. ¶¶ 61). "Courts in this Circuit are in agreement that a plaintiff has standing if he [or she] plausibly alleges that, by failing to provide the required wage statements, the employer was able to hide [its] violations of wage and hour laws' and thus prevent the employee from 'determining and seeking payment for the precise amount of [his] unpaid wages." Roma v. David Carmili, Physician, P.C., 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024) (collecting cases) (quotations omitted).

Accordingly, given that the Complaint adequately alleges downstream harm, the Court finds that plaintiff has sufficiently alleged an injury flowing from defendants' violations of the WTPA.

C. <u>Default Determination</u>

Based upon a review of the allegations in the Complaint, which are undisputed at this time, the Court finds that plaintiff has sufficiently established liability under both the FLSA and NYLL, warranting entry of a default judgment.

Here, it is beyond dispute that defendants are in default. Although it appears that defendants were properly served with the Summons and Complaint, they failed to file an answer or otherwise respond to the pleadings. Moreover, the failure of the corporate defendant to obtain counsel in this case constitutes a failure to defend because the corporate defendants, as corporations, cannot proceed in federal court *pro se*. <u>See</u> <u>Jones v. Niagara Frontier Transp. Auth.</u>, 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only); <u>see also</u> <u>Shapiro, Bernstein & Co. v. Continental Record Co.</u>, 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"). Defendants also failed to respond to plaintiff's request that default be entered, <u>see</u> <u>Hirsch v. Innovation Int'l, Inc.</u>, 1992 WL 316143, at *2 (holding that defendant's "default is crystal clear—it does not even oppose this motion"), and they did not submit papers in response to plaintiff's motion for default judgment. Thus, plaintiff's claims and evidence of damages are undisputed.

Given the numerous opportunities afforded to defendants, and their apparent lack of interest in participating in these proceedings, the Court finds no compelling reason to delay the case any further and finds that default is appropriate here.

II.    Damages

A.    Legal Standard

When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the Complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992).  However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendants can contest the claimed damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.  "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'"  Guttman v. Klein, No. 03 CV 1570, 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court enters a default judgment and the damages do not consist of a sum certain, the Federal Rules of Civil Procedure provide that "[t]he Court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to . . . determine the amount of damages[.]"  Fed. R. Civ. P. 55(b)(2)(B).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing."  Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).  Here, the plaintiff has provided reasonably detailed affidavits in support of his request for damages.  The Court also provided defendants an opportunity to respond to request an inquest hearing or respond to plaintiff's motion.  (ECF No. 22).  Defendants did not

pursue that opportunity.  Thus, the Court sees no reason to delay a determination of plaintiff's damages.

### B.  Damages Requested by Plaintiff

Plaintiff requests the following amounts in damages:  1) $63,282.00 in unpaid overtime pay; 2) $63,282.00 in liquidated damages on the unpaid overtime claim; 3) $16,495.50 in spread-of-hours pay; 4) $16,495.50 in liquidated damages on the spread-of-hours claim; and 5) $10,000 for wage notice violations.  Plaintiff's requested damages total $169,555.00.  (Marino Decl.,[5] Ex. E[6]).

### 1)  Unpaid Overtime Wages Under the FLSA and NYLL

Plaintiff seeks reimbursement for unpaid overtime wages under both the FLSA and the NYLL.  (See Compl. ¶¶ 5, 9, 10, 38, 56, 57, 69-75).  Pursuant to the FLSA, an employee is entitled to be paid for overtime hours (i.e., hours exceeding 40 hours per week), at a "rate not less than one and one-half times the regular rate at which [the employee] is employed."  29 U.S.C. § 207(a)(1).  "Under the FLSA, the 'regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked[.]'"  Pineda v. Frisolino, Inc., 2017 WL 3835882, at *10 (quoting 29 C.F.R. § 788.109).  The regular rate of the employee as defined in the FLSA, however, "cannot be lower than" the applicable minimum wage.  29 C.F.R. § 778.5; Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017).  Thus, under the FLSA, overtime pay should be calculated based on

---

[5] Citations to "Marino Decl." refer to the Declaration of Mark Marino filed on March 5, 2025 in support of plaintiff's motion for default judgment, ECF No. 19.
[6] Plaintiff filed 9 exhibits, two of which were labeled on the docket as "Exhibit C."  Citations herein to "Ex. E" refer to the damages chart attached as the 8th exhibit to the Marino Declaration and referred to as "Ex. E" therein, ECF No. 19-8.

the employee's regular wage or the statutory minimum wage, "whichever is greater." Id. at *16 (citing 29 U.S.C. § 207; 29 C.F.R. § 778.107).

Under the NYLL, an employee is entitled to one-and-one-half their regular rate of pay for hours worked in excess of 40 hours in one workweek. 12 N.Y.C.R.R. §§ 142-2.2, 146-1.4. The regular rate under the NYLL is calculated "by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5. As with the FLSA, under the NYLL, courts calculate an employee's overtime rate using the statutory minimum wage if the employee's pay falls below the minimum wage rate. Rosendo v. Everbrighten Inc., No. 13 CV 7256, 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015), report and recommendation adopted, 2015 WL 4557147 (S.D.N.Y. July 28, 2015).

According to plaintiff's damages chart: (1) from March 1, 2018 until December 31, 2018, plaintiff worked 45 hours per week at a regular rate of pay[7] of $15.50, when the minimum wage was $12.00 per hour;[8] (2) from January 1, 2019 through June 30, 2019, plaintiff worked 45 hours per week at a regular rate of pay of $15.00 when the minimum wage was $13.50; (3) from July 1, 2019 through October 31, 2019, plaintiff worked 60 hours per week at a regular rate of $15.00 when the minimum wage was $13.50; (4) from November 1, 2019 through December 31, 2019, plaintiff worked 84 hours per week at a regular rate of $15.00 per hour when the minimum wage was $13.50; (5) from January 1, 2020 through March 31, 2020, August 1, 2020 through January 22, 2021, plaintiff worked 84 hours per week at a regular rate of $15.00 per hour when the

---

[7] Plaintiff's damages chart calculates the regular rate of pay by dividing plaintiff's weekly pay by hours worked, as required by the FLSA and NYLL.

[8] Although plaintiff does not allege the number of defendants' employees, plaintiff utilizes the minimum wage for employers with 10 or fewer employees. See 12 N.Y.C.R.R. §§ 146-1.2(a)(1)(B). At all relevant times, plaintiff was paid a rate higher than the minimum wage for employers with 10 or fewer employees and the minimum wage for employers with 11 or more employees. See id. Plaintiff was also paid a rate higher than the federal minimum wage, $7.25. See 29 U.S.C. § 206(a).

14

minimum wage was $15.00 per hour; (6) from February 15, 2021 through December 31, 2021, plaintiff worked 84 hours per week at a regular rate of $16.00 per hour when the minimum wage was $15.00 per hour; (7) from January 1, 2022 through March 31, 2023, plaintiff worked 84 hours per week at a regular rate of $17.00 per hour when the minimum wage was $15.00; and (8) from April 1, 2023 through May 29, 2023, plaintiff worked 70 hours per week at a regular rate of $17.00 when the minimum wage was $15.00 per hour.  (Ex. E).

In this case, the NYLL allows for the greater recovery for plaintiff because his pay rates of between $15.00 and $17.00 per hour exceeded the minimum wage rates under both the FLSA and NYLL. Thus, using his regular rate of pay calculated in accordance with the NYLL, plaintiff's overtime rate per hour was $22.50 for the weeks in which his regular rate was $15.00 per hour, $23.25 for the weeks in which his regular rate was $15.50 per hour, $24.00 for the weeks in which his regular rate was $16.00 per hour, and $25.50 for the weeks in which his regular rate was $17.00 per hour.

Using these overtime rates, plaintiff seeks overtime wages in the total amount of $63,292.00 for the entire period.  (Ex. E).  Specifically, plaintiff worked 2,538 overtime hours at a rate of $22.50, 220 overtime hours at a rate of $23.50, 2,024 overtime hours at a rate of $24.00, and 3,100 overtime hours at a rate of $25.50.  (Id.)  Thus, plaintiff was owed $189,846 in unpaid overtime.  Plaintiff also worked a total of 10,120 hours at his regular rate, and he was therefore owed $160,360 in regular wages.  (Id.)  It total, plaintiff was owed $350,206.  According to plaintiff's damages chart, defendants paid plaintiff $286,924 of that amount.  (Id.)  Thus, defendants failed to pay plaintiff $63,282 in overtime wages.

Therefore, the Court respectfully recommends that plaintiff be awarded $63,282 in damages for unpaid overtime hours worked.

2)  Plaintiff's Spread-of-Hours Premiums Claim

Plaintiff alleges that, from November 2019 through March 2023, he regularly worked 12 hours per day, seven days per week.  (Ex. E).  He alleges that even though he worked more than 10 hours per day for this period, he did not receive spread-of-hours premiums for these days. (Compl. ¶¶ 5, 7, 56, 81).

Plaintiff has calculated that he is owed $16,495.50 in spread-of-hour premium damages for the days he worked 12 hours per day.  However, the majority of courts in this circuit have held that spread of hours pay under the NYLL are available only to workers earning at or below the minimum wage.  See Sosnowy v. A. Perri Farms, Inc., 764 F. Supp. 2d 457, 474 (E.D.N.Y. 2011); Jenkins v. Hanac, Inc., 493 F. Supp. 2d 556 (E.D.N.Y. 2007); Singh v. Patel, No. 12 CV 3204, 2013 WL 2190153, at *2 (E.D.N.Y. May 16, 2013); Qiu Hua Tan v. Voyage Express Inc., No. 15 CV 6202, 2017 WL 2334969, at *3–4 (E.D.N.Y. May 25, 2017); Luna v. Gon Way Constr., Inc., No. 16 CV 1411, 2017 WL 835321, at *11 (E.D.N.Y. Feb. 14, 2017), report and recommendation adopted by, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017).

At all relevant times, plaintiff was paid a rate above minimum wage.  (See supra at 14–15).  Thus, plaintiff is not entitled to spread-of-hours pay.

3)  Liquidated Damages Under the FLSA and NYLL

Plaintiff also seeks liquidated damages for the defendants' wage violations pursuant to the FLSA and NYLL.  (Compl. ¶ 10; Mot.[9] at 8–10).

The FLSA and NYLL provide for liquidated damages for wage-claim violations, calculated in an amount equal to 100% of the wage underpayments.  29 U.S.C. § 216(b); N.Y.

---

[9] Citations to "Mot." refer to plaintiff's Motion for Default Judgment, filed on March 5, 2025, ECF No. 18.

Lab. L. §§ 198(1-a) and 663(1).  (See Pl.'s Mem.[10] at 8).  Although plaintiff has proven that he was not paid the proper wages under both the FLSA and the NYLL, and thus might technically be entitled to liquidated damages under both statutes, plaintiffs "are not entitled to recover twice for the same injury."  Charvac v. M & T Project Managers of N.Y., Inc., 2015 WL 5475531, at *4 (internal quotation marks and citations omitted); Llolla v. Karen Gardens Apartment Corp., 2014 WL 1310311, at *11;  Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 2010 WL 4159391, at *3.  Thus, having established wage violations under both laws, plaintiffs "may recover under the statute which provides the greatest amount of damages[.]"  Charvac v. M & T Project Managers of N.Y., Inc., 2015 WL 5475531, at *4 (quoting Jiao v. Shi Ya Chen, No. 03 CV 0165, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007)).

Prior to November 24, 2009, an employee could recover liquidated damages under the NYLL if the underpayment was found to be willful.  N.Y. Lab. Law § 663(1) (1967).  However, an amendment to the NYLL, effective November 24, 2009, "incorporated the federal standard" and shifted the burden of proving good faith to the employer.  Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (quoting Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)).  Under both the FLSA and the NYLL, the employer now bears the burden of proving good faith and reasonableness.

Under the NYLL's liquidated damages provision, "courts have not substantively distinguished the federal standard from the current state standard of good faith."  Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015) (citing He v. Home on 8th Corp., No. 09 CV 5630, 2014 WL 3974670, at *7 n. 19 (S.D.N.Y. Aug. 13, 2014); Eschmann v. White

---

[10] References to "Pl.'s Mem." refer to plaintiff's Memorandum of Law in support of the Motion for Default Judgment, dated March 5, 2025, ECF No. 20.

Plains Crane Serv., Inc., No. 11 CV 5881, 2014 WL 1224247, at *9 (E.D.N.Y. Mar. 24, 2014)).

Accordingly, the employer's burden of proving good faith "'is a difficult one, with double

damages being the norm and single damages the exception.'" Gortat v. Capala Bros., 949 F.

Supp. 2d 374, 380 (E.D.N.Y. 2013) (awarding 100% liquidated damages under the FLSA

standard) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)).

Since the defendants have chosen not to appear in this action and have not established

that they had a good faith basis to believe that their underpayment of wages complied with the

NYLL or the FLSA, the Court respectfully recommends that plaintiff be awarded liquidated

damages. See Xi Qun Xu v. JNP Bus Serv. Inc., No. 16 CV 245, 2018 WL 1525799, at *9

(E.D.N.Y. Feb. 26, 2018), report and recommendation adopted in part, rejected in part on other

grounds, 2018 WL 1525662 (E.D.N.Y. Mar. 28, 2018) (recommending the award of liquidated

damages under the NYLL for overtime wages, minimum wages, and spread-of-hours premiums).

Since plaintiff stands to recover more under the NYLL than under the FLSA, the NYLL

governs plaintiff's recovery of liquidated damages. Charvac v. M & T Project Managers of N.Y.,

Inc., 2015 WL 5475531, at *4. Accordingly, the Court respectfully recommends that plaintiff be

awarded liquidated damages in an amount equal to 100% of the sum of the overtime wages owed

under the NYLL, totaling $62,282.

4) Wage Statement and Notice Penalties

Plaintiff requests $10,000 in wage notice and wage statement penalties. (Mot. at 8).

Under the WTPA, as described above, an employer must provide wage notices, N.Y. Lab. L. §

195(1), and wage statements, N.Y. Lab. L. § 195(3). A plaintiff may recover statutory damages

of $250 for each workday when the violations occurred, with a cap of $5,000, for each of the two

provisions violated. N.Y. Lab. L. §§ 195(1), 195(3). Plaintiff worked for defendants from

18

approximately 2015 until approximately June 2023. Although plaintiff does not provide his exact dates of employment, he alleges he worked 5 days per week from March 2018 until June 2019, 6 days per week from July 2019 through October 2019, and 7 days per week from November 2019 through March 31, 2020, August 1, 2020 through January 22, 2021, February 15, 2021 through March 31, 2023, and April 2023 through May 29, 2023—approximately 1,614 days. (Soto Gomez Decl.[11] ¶¶ 7-12; Ex. E). Thus, because plaintiff alleges violations of Section 1951(1) and 1953(3) on each day worked, and because the statutory damages of $250 per day would exceed the maximum damages permitted under the WTPA, plaintiff may be awarded the maximum of $10,000 in statutory damages. See Soriano v. Amoun Inc., No. 16 CV 4257, 2017 WL 11745947, at *3 (S.D.N.Y. Mar. 16, 2017).

Given that plaintiff has adequately stated claims under the WTPA, and defendants have failed to appear to contest plaintiff's claims, the Court respectfully recommends that plaintiff be awarded $10,000 in wage statement and notice penalties.

    5)  Pre-Judgment Interest

Under New York law, a plaintiff is entitled to interest on all wages awarded, calculated at a rate of 9% per annum. See N.Y.C.P.L.R. § 5004. Pre-judgment interest is not available under the FLSA because the federal statute does not allow an employee to recover "prejudgment interest on any portion of their recovery for which they have been awarded federal liquidated damages," since liquidated damages under the FLSA "are considered compensatory in nature and thus serve as a form of pre-judgment interest." Yuquilema v. Manhattan's Hero Corp., No. 13 CV 461, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 20, 2014) (citations and quotation marks omitted), report and recommendation adopted, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014); Yu

---

[11] Citations to "Soto Gomez Decl." refer to the plaintiff's declaration submitted as Exhibit A to the Ames Declaration, ECF No. 19-1.

G Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261 (S.D.N.Y. Oct. 21, 2008).  However, the Second Circuit has held that, as liquidated damages and prejudgment interest are not functional equivalents under the NYLL, a prevailing plaintiff may recover prejudgment interest for judgments rendered under the NYLL.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).[12]

In this case, since the Court did not award plaintiff damages on his FLSA claims,[13] there is no impediment to awarding liquidated damages and interest on plaintiff's NYLL claims.  Accordingly, plaintiff is entitled to pre-judgment interest on his overtime claim.

6)  Attorney's Fees and Costs

Both the FLSA and NYLL allow for an award of attorney's fees.  See 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(4), 663(1); Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 473 (S.D.N.Y. 2009) (providing that the court in an FLSA action "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); see, e.g., Torres v. Gristede's Operating Corp., No. 04 CV 3316, 2012 WL 3878144, at *1 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 Fed. App'x 1, 3 (2d Cir. 2013).

---

[12] Where a plaintiff receives damages under both the FLSA and the NYLL, prejudgment interest only accrues on those parts of the award for which liquidated damages are not awarded under the FLSA.  Yuquilema v. Manhattan's Hero Corp., 2014 WL 4207106, at *11; Yu G Ke v. Saigon Grill, Inc., 595 F. Supp. 2d at 261.  Further, pre-judgment interest may not be awarded under the NYLL in addition to liquidated damages that are awarded for violations of the FLSA.  See Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011); Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 92–93 (E.D.N.Y. 2012); see also Hengjin Sun v. China, 2016 WL 1587242, at *5–6 (citing cases and holding that plaintiffs are entitled to pre-judgment interest on their non-overlapping NYLL wage claims at a simple rate of 9% per year).  Since the Court has not recommended an award of damages under the FLSA, this limitation on pre-judgment interest does not apply.

[13] Although the plaintiff established that defendants violated both the FLSA and NYLL, the Court only recommends an award of damages and liquidated damages under the NYLL.

7) <u>Prevailing Party</u>

The FLSA is a fee shifting statute and the Court "must" award a reasonable attorney's fee to a prevailing party in an FLSA action. <u>Kahlil v. Original Old Homestead Rest., Inc.</u>, 657 F. Supp. 2d at 473 (quoting 29 U.S.C. § 216(b) (providing that the court in an FLSA action "*shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action" (emphasis added))); <u>see also</u> <u>Torres v. Gristede's Operating Corp.</u>, 2012 WL 3878144, at *1. Similarly, the NYLL provides for an award of reasonable attorney's fees when the employee prevails on a wage claim. N.Y. Lab. Law § 663(1). Section 663 provides that successful employees are entitled to "recover in a civil action the amount of any such underpayments, together with costs[,] all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules . . . ." <u>Id.</u>

Plaintiffs are prevailing parties under the FLSA and the NYLL "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." <u>Kahlil v. Original Old Homestead Rest., Inc.</u>, 657 F. Supp. 2d at 474 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)); <u>see</u> <u>Koster v. Perales</u>, 903 F.2d 131, 134 (2d Cir. 1990) (holding that "[a] plaintiff may be considered a prevailing party even though the relief ultimately obtained is not identical to the relief demanded in the complaint").

Here, because defendants have defaulted, plaintiff is a prevailing party and therefore should receive an award of reasonable attorney's fees and costs.

III.    <u>Calculation of Reasonable Attorney's Fees</u>

A. <u>Legal Standard</u>

"The district court retains discretion to determine . . . what constitutes a reasonable fee." <u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011) (quoting <u>LeBlanc-Sternberg v.</u>

Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)).  "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee." Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012) (citing Perdue v. Kenny A., 559 U.S. 542, 551–52 (2010)), report and recommendation adopted, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); see also Millea v. Metro-North R.R. Co., 658 F.3d at 166–67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point"); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188–90 (2d Cir. 2008).

To determine the lodestar amount, a court must determine the "number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. Mar. 19, 2013) (quoting Hensley v. Eckerhart, 461 U.S. at 433), report and recommendation adopted, 2013 WL 1622713 (E.D.N.Y. Apr. 15, 2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 2013 WL 1285260, at *2 (S.D.N.Y. Mar. 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by a reasonable hourly rate" (citing Millea v. Metro-North R.R., Co., 658 F.3d at 166); Dunn v. Advanced Credit Recovery, Inc., 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'"  Millea v. Metro-North R.R. Co., 658 F.3d at 166–67 (quoting Perdue v. Kenny A., 559 U.S. at 553).  Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'"  Id. (quoting Perdue v. Kenny A., 559

U.S. at 553); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2.  In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors."  Millea v. Metro-North R.R. Co., 658 F.3d at 167.  As the court explained in Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if necessary, adjust[] the resulting figure using the [Johnson v. Georgia Highway Express, Inc.] factors to reflect consideration of any special circumstances."  2012 WL 676350, at *5 n.6 (discussing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).

B.  Analysis

In this case, plaintiff was represented by Mark Marino, Esq. and Caralina Sojo, Esq.[14] Ms. Sojo has been an attorney since 2018, admitted to practice in Colombia.  (Mot. at 13).  She received a Master of Laws degree in 2019 to practice law in the United States and has focused her practice on intellectual property litigation and enforcement.  (Id.; Ex. F[15]).  Ms. Sojo bills at a rate of $400 per hour and spent approximately 0.8 hours on this case.  (Id.; Ex. F).  Mr. Marino has been an attorney since 2001, admitted to practice in New York and Illinois, and represents clients in matters involving commercial litigation, employment, civil rights, and wage and hour actions.  (Id.; Ex. F).  He bills at a rate of $350 per hour and spent approximately 3.1 hours on this case.  (Id.; Ex. F).  Counsel also employed paralegals who billed at a rate of $125 per hour and spent approximately 5.3 hours on this case.  (Id.; Ex. F).

---

[14] Plaintiff is also represented by Robert Jun, Esq.  (See ECF No. 21).  Plaintiff does not seek reimbursement for Mr. Jun's fees.  Additionally, Mr. Jun's appearance was entered after plaintiff's motion for default judgment was filed.  Therefore, the Court does not include Mr. Jun in its fee analysis or award.

[15] Citations to "Ex. F" refer to the invoice for attorney's fees attached as Exhibit 5 to the Marino Declaration, ECF No. 19-9.

In accordance with <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, counsel submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the rate at which the services were charged, along with the name of the attorney, and a description of services performed.  711 F.2d 1136, 1148 (2d Cir. 1983). (<u>See</u> Ames Decl., Ex. 12).

1)  <u>Hourly Rates</u>

In order to calculate the lodestar, the Court must first determine a reasonable hourly rate for the legal services performed.  <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d at 190.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate . . ."  <u>Id.</u> at 186 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. at 433).  Additionally, the Second Circuit has adopted the following factors, *inter alia*, to guide the inquiry as to what constitutes a reasonable hourly rate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Id.</u> at 186 n.3 (citing <u>Johnson v. Georgia Highway Exp., Inc.</u>, 488 F.2d at 717–19, <u>abrogated on other grounds by</u>, <u>Blanchard v. Bergeron</u>, 489 U.S. 87 (1989)).  A number of recent cases have considered these factors when awarding attorneys' fees.  <u>See</u> <u>Lisnitzer v. Shah</u>, No. 11 CV 4641, 2022 WL 3931388, at *2 (E.D.N.Y. July 6, 2022), <u>report and recommendation adopted sub</u>

nom., <u>Lisnitzer v. Zucker</u>, 2022 WL 3914964 (E.D.N.Y. Aug. 31, 2022), <u>amended by</u>, 2023 WL 2020963 (E.D.N.Y. Feb. 15, 2023) (adjusting award by 62 cents); <u>see also</u> <u>Smith v. City of New York</u>, No. 19 CV 6198, 2022 WL 939711, at *4 n.3 (E.D.N.Y. Mar. 28, 2022).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . . , the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . . , and other returns (such as reputation, etc.) that an attorney might expect from the representation.

<u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d at 184. In determining the appropriate rate to be charged, the Second Circuit has indicated that courts may consider evidence of prevailing rates for similar services beyond the fee application itself. <u>See</u> <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 885 F.2d 1053, 1058–59 (2d Cir. 1989). In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged.  <u>See</u> <u>Cruz v. Local Union No. 3</u>, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "[a] district court's 'choice of rates [is] well within [its] discretion'" (quoting <u>Cabrera v. Jakabovitz</u>, 24 F.3d 372, 393 (2d Cir. 1994), <u>cert. denied</u>, 513 U.S. 876 (1994))).  The Court may also "look to fees awarded in recent FLSA and NYLL cases in the Eastern District of New York in order to determine whether the fees requested are reasonable."  <u>Fermin v. Las Delicias Peruanas Rest., Inc.</u>, 93 F. Supp. 3d 19, 52 (E.D.N.Y. 2015).  Indeed, the Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits.'"  <u>Simmons v. New York City Transit Auth.</u>, 575 F.3d 170, 174 (2d Cir. 2009) (citations and internal quotation marks omitted) (holding that when awarding attorney's

fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located).  To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

In a recent decision of this court, the Honorable Frederic Block found that the prevailing rates for partners in this district is $450 to $650 per hour and that the prevailing rate for paralegals is $100 to $150.  Rubin v. HSBC Bank USA, 763 F. Supp. 3d 233, 243–44 (E.D.N.Y. 2025).  Here, Mr. Marino's and Ms. Sojo's requested hourly rates are slightly lower than the rates approved in Rubin and therefore, this Court finds them to be reasonable.  See, e.g., Harbus v. Vosa TV Inc., No. 24 CV 3572, 2025 WL 1153818, at *3 (E.D.N.Y. Apr. 21, 2025) (relying on Rubin to increase the hourly rate of a senior partner to $650 in a default judgment action); see also Moore v. Rubin, 766 F. Supp. 3d 423, 432 (E.D.N.Y. 2025) (relying on the Johnson factors to set partners' hourly rates at $1000 and senior attorney's hourly rate at $500, even though the rates exceed those found reasonable in Rubin).  The paralegals' requested rates are also in line with the rates approved in Rubin and therefore, this Court finds them also to be reasonable.

Thus, the Court respectfully recommends that counsel be awarded fees calculated at the hourly rate of $350 for Mr. Marino, $400 for Ms. Sojo, and $125 for paralegals, consistent with rates generally awarded in this district.

2) <u>Hours Billed</u>

Turning to the number of hours billed, Mr. Marino represents that he spent 3.1 hours on this matter, that Ms. Sojo spent 0.8 hours on this matter, and that the paralegals spent 5.3 hours on this case. (Ex. F).

To determine the reasonableness of an attorney's fees request, "[t]he Court must make 'a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'" <u>Maldonado v. La Nueva Rampa, Inc.</u>, No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting <u>Lunday v. City of Albany</u>, 42 F.3d 131, 134 (2d Cir. 1994), <u>report and recommendation adopted</u>, (S.D.N.Y. Aug. 9, 2012). "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" <u>Id.</u> (quoting <u>Grant v. Martinez</u>, 973 F.2d 96, 99 (2d Cir. 1992)). In this Circuit, judges are required to "use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." <u>Cho v. Koam Med. Servs. P.C.</u>, 524 F. Supp. 2d 202, 208 (E.D.N.Y. Nov. 30, 2007) (quoting <u>Fox Indus., Inc. v. Gurovich</u>, No. 03 CV 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)).

In reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir. 1999) (citing <u>Hensley v. Eckerhart</u>, 461 U.S. at 433–35, 440); <u>see also</u> <u>Rotella v. Board of Educ.</u>, No. 01 CV 434, 2002 WL 59106, at *3–4 (E.D.N.Y. Jan. 17, 2002) (applying percentage reduction to fees of several attorneys for excessive and redundant billing); <u>Quinn v. Nassau City Police Dep't</u>, 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); <u>Perdue v. City Univ. of N.Y.</u>, 13 F. Supp. 2d 326, 346

(E.D.N.Y. 1998) (imposing a 20% reduction for redundancy); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting 40% of plaintiffs' lawyer's hours).

Similarly, courts routinely apply across-the-board reductions for vague entries. See, e.g., In re Olson, 884 F.2d 1415, 1428–29 (D.C. Cir. 1989) (reducing fees based on lack of specificity in description of work performed); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing fee request by 40% for, inter alia, insufficient descriptions of work performed), rev'd & remanded on other grounds, 38 F.3d 651 (2d Cir. 1994); Cabrera v. Fischler, 814 F. Supp. 269, 290 (2d Cir. 1993) (reducing fees by 30% for vague entries with insufficient descriptions of work performed), aff'd in part, vacated in part, and remanded on other grounds sub nom., Cabrera v. Jakabovitz, 24 F.3d 372 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994); Nu-Life Constr. Corp. v. Board of Educ., 795 F. Supp. 602, 607–08 (E.D.N.Y. 1992) (reducing fees by 30% due in part to lack of specificity in descriptions of work performed); Meriwether v. Coughlin, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (finding an overall reduction of 15% warranted based on vague descriptions of work performed).

For a simple default, generally, the "high-end amount of hours spent on eases [sic] in a similar procedural posture (i.e., a motion for default judgment immediately following the filing of a complaint) is no more than 55 hours total." Maldonado v. La Nueva Rampa, Inc., 2012 WL 1669341, at *14 (collecting cases from the Second Circuit in which courts approved the number of hours spent on default judgment cases in similar "wage-and-hour cases" as requested if less than 55, and reduced the number of hours, if greater).

Here, the time spent on this matter is far less than the upper range permitted in other wage and hour cases.  Accordingly, the Court finds the number of hours to be reasonable. Having found the number of hours spent on the matter to be reasonable, the Court respectfully recommends that plaintiff's counsel receive $2,067 in attorney's fees, based on 0.8 hours billed by Ms. Sojo at a rate of $400 per hour, 3.1 hours billed by Mr. Marino at a rate of $350 per hour, and 5.3 hours billed by paralegals at a rate of $125.  (See Ex. F).

   3)  Costs

Counsel also seeks $483.20 in costs.  (Ex. F).  Prevailing parties are generally able to recover costs.  However, recovery is available only for identifiable costs.  Moon v. Gab Kown, No. 99 CV 11810, 2002 WL 31512816, at *8 (S.D.N.Y. Nov. 8, 2002) (quoting Kuzma v. IRS, 821 F.2d 930, 933–34 (2d Cir. 1987).  "[T]he party moving for costs bears the burden of demonstrating the reasonableness of each charge; failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery."  John v. Demaio, No. 15 CV 6094, 2016 WL 7469862, at *12 (E.D.N.Y. Sept. 26, 2016).  Further, a court cannot award costs without the underlying invoices.  Id.

Counsel provides a list of costs, including "Servico: S1909775," "DGR: Work Order 714664," "DGR: Work Order 714667," and "DGR: Work Order 714351."  Counsel does not describe these costs nor provide underlying invoices. The Court is unable to determine the reasonableness of these costs.  Accordingly, the Court denies counsel's request for costs.

IV.   Post-Judgment Interest

Additionally, the Court respectfully recommends that plaintiff is entitled to post-judgment interest under 28 U.S.C. § 1961(a).  Under Section 1961(a), interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity

Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."  28 U.S.C. § 1961(a).  The Second Circuit has held that post-judgment interest is mandatory on all awards in civil cases as of the date judgment is entered.  Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996).  Accordingly, it is respectfully recommended that plaintiff be awarded post-judgment interest at the statutory rate, as calculated by the Clerk of Court, to the extent that any accrues after entry of judgment.

V.    Damages Chart

| | | |
|---|---|---|
| Overtime Wages[16] | $ | 62,282.00 |
| Liquidated Damages | $ | 62,282.00 |
| Wage Statement and Notice Penalties | $ | 10,000.00 |
| **TOTAL DAMAGES** | $ | 134,564 |
| Attorney's Fees | $ | 2,067.50 |
| **TOTAL AWARD** | $ | 126,631.50 |

VI.    Automatic Penalty for Failure to Pay

Finally, the NYLL provides that, "[a]ny judgment or court order awarding remedies under this section [sections 198 and 663, as does the judgment applied for herein] shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is

---

[16] Prejudgment interest is applied to overtime wages but not to liquidated damages or the wage statement and notice penalties.  "'When unpaid wages were incurred at various times…[s]imple prejudgment interest is calculated from a singular, midpoint date…through the date judgment is entered.'" Gortat v. Capala Bros., 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013) (quoting Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012)).  The first date plaintiff alleges wage violations occurred is March 1, 2018 and the last date is May 29, 2023.  (See Ex. E).  The midpoint of plaintiff's claims is thus October 13, 2020.  Prejudgment interest is therefore calculated by multiplying unpaid overtime pay by 9% per annum from October 13, 2020 until the date of judgment.

later, the total amount of judgment shall automatically increase by fifteen percent." N.Y. Lab. Law §§ 198(4), 663(4). It further provides that costs and attorney's fees incurred in enforcement of a judgment shall be awarded to the plaintiff. Id. The Court respectfully recommends that the district court include such language in its final judgment, should it adopt this Report and Recommendation.

CONLCUSION

The Court respectfully recommends that plaintiff's motion for entry of a default judgment be granted, and that plaintiff be awarded $134,564 in damages as follows: (1) $62,282 in unpaid overtime wages plus any prejudgment interest; (2) $62,282 for liquidated damages; and (3) $10,000 for wage statement and notice penalties. The Court also respectfully recommends that plaintiff's counsel be awarded $2,067 in fees.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the district court's order. See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      December 31, 2025

                                /s/ Cheryl L. Pollak
                                Cheryl L. Pollak
                                United States Magistrate Judge
                                Eastern District of New York